IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YETI COOLERS, LLC, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | 1:16-CV-00578-RP |
| IMAGEN BRANDS, LLC, *d/b/a* | § | |
| CROWN PRODUCTS, and | § | |
| EBSCO INDUSTRIES, INC., | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) and the responsive pleadings thereto. (Dkt. 8). Having reviewed the pleadings and the applicable law, the Court issues the following order.

## BACKGROUND

Plaintiff YETI Coolers, LLC, ("Plaintiff") is a Delaware corporation with its principal place of business in Austin, Texas. Plaintiff engages in the development, manufacture, and sale of premium, heavy-duty insulated drinkware. Defendants Imagen Brands, LLC, and Ebsco Industries, Inc., (collectively, "Defendants") are entities organized under the laws of Alabama and Delaware, respectively, with principal places of business in Alabama.

Plaintiff brought suit against Defendants on November 23, 2016. Plaintiff's Complaint asserts six causes of action against Defendants arising from the Defendants' sale of stainless steel insulated drinkware. Specifically, these claims are: (i) state and federal trade dress dilution; (ii) federal and common law trade dress infringement; (iii) federal and common law unfair competition; (iv) common law misappropriation; and (v) unjust enrichment. Plaintiff premises its claims on its

allegation that Defendants have unlawfully copied the design and trade dress of its 30-ounce and 20-ounce stainless steel tumblers.

Defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6) on October 4, 2016. Defendants assert that Plaintiff has failed to state a claim upon which relief may be granted because: (1) Plaintiff has not adequately identified any protectable trade dress; (2) Plaintiff has pleaded insufficient facts to establish that its trade dress has acquired secondary meaning or that there is a likelihood of confusion between Plaintiff's and Defendants' products; (3) Plaintiff has not adequately alleged claims for false designation of origin, unfair competition, or unjust enrichment; (4) Plaintiff has pleaded insufficient facts to support its common law misappropriation claim; and (5) Plaintiff has not alleged facts sufficient to demonstrate that its trade dress is famous.

## LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Throughout this process, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

## DISCUSSION

### A. Trade Dress Infringement

The Lanham Act provides a cause of action for trade dress infringement. 15 U.S.C. § 1125(1). "'Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product.'" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (quoting *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998)).

To succeed on an infringement or unfair competition claim under the Lanham Act, a plaintiff must establish two elements. First, the plaintiff must establish "that the mark or trade dress, as the case may be, qualifies for protection." *Pebble Beach*, 155 F.3d at 536. To qualify for legal protection, the trade dress must be inherently distinctive or have achieved secondary meaning in the public's mind; that is, it must have "come through use to be uniquely associated with a specific source." *Id.* (internal quotations and citations omitted). Trade dress, moreover, is only entitled to legal protection if it is non-functional. *Id.* Second, the plaintiff must show that the defendant's use of the trade dress creates "a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship" of the defendant's product or service. *Bd. of Supervisors for La.*

3

*State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (internal quotations and citations omitted). "An identical test applies to claims for trademark infringement, unfair competition, and unjust enrichment under Texas common law." *Primesource Building Products, Inc. v. Hillman Group, Inc.*, No. 3:14-CV-2521-B, 2015 WL 11120882, at *3 (N.D. Tex. March 31, 2015) (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010); *KLN Steel Prods.*, 278 S.W.3d at 440)).

The purpose of the Lanham Act's protection "is 'to secure to the owner of the [trade dress] the goodwill of his business and to protect the ability of consumers to distinguish among competing products.'" *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354–55 (5th Cir. 2002) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)). A pro-competitive theory underlies the law: allowing the exclusive use of source-identifying trade dress benefits both consumers and producers. By identifying a single source of the product, the trade dress provides a quick way to assure consumers that the product "is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past," thus reducing the costs associated with making purchasing decisions. *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995). The law benefits producers by ensuring that they—rather than free-riding imitators—reap the financial rewards associated with making superior products. *Id.* "The law thereby encourage[s] the production of quality products . . . and simultaneously discourages those who hope to sell inferior products by capitalizing on a consumer's inability quickly to evaluate the quality of an item offered for sale." *Id.* (internal quotations and citations omitted).

At the same time, the Supreme Court has recognized that anti-competitive abuse of the Lanham Act could result from the overextension of the law's protection for product-design trade dress. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 214 (2000). The Court has stated that "[t]rade dress protection must subsist with the recognition that in many instances there is no

prohibition against copying goods and products," and that such copying "will have salutary effects in many instances." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). Accordingly, "[w]hen trade dress is claimed for the design of a product itself . . . the courts are especially skeptical, wary of creating 'back-door patents' which could deform competition and tilt the playing field in favor of the established firm over the brash new-comer." 1 McCarthy on Trademarks and Unfair Competition § 7.64 (4th ed.).

In this case, YETI alleges it has protectable product-design trade dress rights in:

> the overall look and appearance of the [tumblers], including, but not limited to, the visual flow of the [tumblers]; the curves, tapers, and lines in the [tumblers]; the design, style, and appearance of these curves, tapers, and lines in the [tumblers]; the visual connection and relationship between the curves, tapers, and lines in the [tumblers]; the style, design, and appearance of design aspects of the [tumblers]; the design and appearance of the walls of the [tumblers]; the design and appearance of the rim of the [tumblers]; the design, appearance, and placement of the taper in the side wall of the [tumblers]; the design, appearance, and placement of the upper portion, mid portion, and bottom portion of the side wall of the 30 oz. tumbler; the design, appearance, and placement of the style line around the base of the [tumblers]; the design, appearance, and placement of the tab on the lid of the [tumblers]; the design, appearance, and placement of the drinking opening on the lid of the [tumblers]; the design, appearance, and placement of the top plane of the lid of the [tumblers]; the design, appearance, and placement of the side walls of the lid of the [tumblers]; the color contrast and color combinations of the [tumblers] and the tumbler lid on the [tumblers]; and the overall look and appearance of the tumbler and the tumbler with the tumbler lid that YETI uses in connection with the [tumblers].

(Compl., Dkt. 1, ¶¶ 13, 15).

Plaintiff includes in its Complaint the following two photographs to exemplify its claimed trade dress.




**Plaintiff's 30-ounce Tumbler**     **Plaintiff's 20-ounce Tumbler**

As an initial matter relevant to each of Plaintiff's claims, Defendants argue that Plaintiff has not sufficiently identified its trade dress but has instead claimed protection for elements of a generic product design. As to trade dress infringement specifically, Defendants assert that Plaintiff's Complaint lacks sufficient factual allegations to demonstrate that Plaintiff's products have acquired secondary meaning or distinctiveness. The Court considers each of Defendants' arguments in turn.

1. **Identification of Trade Dress**

Defendants argue that "Plaintiff's meandering, paragraph-long descriptions of its alleged rights" in fact describe only a few generic features and fail to give sufficient notice of what precisely constitutes Plaintiff's trade dress. (Defs.' Mot. Dismiss, Dkt. 8, at 5–6). For the reasons that follow, the Court agrees that certain of Plaintiff's claims are impermissibly vague but does not conclude that the claim should be dismissed.

"In the trade secret context, a plaintiff must articulate the elements that comprise its protected trade dress in order for the court to evaluate the plausibility of its claim and so the defendant has fair notice of the grounds of the claim." *N.Y. Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 882–83 (S.D. Tex. 2014). "All types of intellectual property, including unregistered trade dress, must have clearly defined boundaries of what is alleged to be the zone of exclusive rights." 1 McCarthy on

Trademarks and Unfair Competition § 8:3 (4th ed.) (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) ("[L]ike any property right, its boundaries should be clear.")). "[A] vague, broad and non-specific definition of trade dress not only makes it impossible for a court to apply the test of distinctiveness, but also raises the danger of overprotection, with resulting anti-competitive injury to competitors . . . ." *Id.* Faced with a vague definition of a plaintiff's asserted rights, competitors are left to guess as to how to design a non-infringing product and are handicapped in defending against the plaintiff's claim of infringement. *Id.*

While Plaintiff seeks protection for the "overall look" of its trade dress, "focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). Having reviewed the elements that, at least in part,[1] make up the overall look of Plaintiff's claimed trade dress, the Court finds that many of them are vague and fail to give notice of what is claimed to competitors. This Court is unsure, for example, that the "visual flow" element of the tumblers is something distinct from the "overall look and appearance." (*See* Compl., Dkt. 1, ¶ 13). Plaintiff claims protection for the "curves, tapers, and lines," the design of the same, and the relationship among them, but never identifies which "curves, tapers, and lines" it refers to. (*See id.*). Are the curves revealed in a horizontal cross section (does Plaintiff seek protection for circular cups?) or with a vertical one? Are these "curves, tapers, and lines" distinct from certain other separately listed elements, for instance, the claimed "style line" at the bottom of the cup, or the "taper in the side wall"? Is the phrase "appearance of design aspects of the [tumblers]"—a claimed element of Plaintiff's trade dress—not merely another way of saying "the overall look and appearance of the [tumblers]" as defined by certain elements of design?

---

[1] Plaintiff's Complaint indicates that its list of elements comprising Plaintiff's trade dress is non-exhaustive. (Compl., Dkt. 1, ¶ 13).

7

Plaintiff's photographs provide no answers to these questions. Indeed, certain vague elements of Plaintiff's claimed trade dress do not appear in the photographs at all. For example, Plaintiff claims protection for the "design, appearance, and placement of the drinking opening on the lid," but does not describe the design, appearance, or placement of the opening, which is not visible in the photographs. It could be a square opening in the center of the lid, though the Court assumes it is more likely an oblong opening at the edge, like most other cup lids. The same goes for Plaintiff's claimed "design, appearance, and placement of the top plane of the lid." (*See id.*). Does Plaintiff allege that its placing the top plane of the lid at the top of the lid is a protectable element of its trade dress, or is there a more specific design element on the lid—is there a logo, is it concave or convex, with paisley etchings? Plaintiff's descriptions of the "side walls of the lid," the rim, and the design and appearance[2] of the lid's tab are similarly infirm.

In spite of the foregoing, certain alleged aspects of Plaintiff's trade dress are sufficiently specific. For example, the placement of the "style line" near the base of the cup is clear in the photograph. The color contrasts and combinations are also visible: Plaintiff claims a combination of bare steel and clear plastic as an element of its trade dress. The "taper in the side wall" of the tumblers is also visible in the photograph. As Plaintiff identifies the design of "the upper portion, mid portion, and bottom portion of the side wall" as an element of the 30-ounce tumbler trade dress only, it can be inferred that it refers to wide top portion, sloping middle, and narrower lower portion that distinguishes the 30-ounce tumbler from the 20-ounce tumbler.

In sum, the Court finds that at least some of Plaintiff's allegations are sufficiently specific and provide notice of what Defendant claims as its protectable trade dress. These allegations make it unnecessary to dismiss Plaintiff's suit for failure to adequately identify its trade dress. However, the balance of Plaintiff's allegations are unclear or overbroad and thus pose an anti-competitive risk.

---

[2] The photographs provide a side view of the tab. This provides notice of the tab's placement but leaves unclear what aspect of its design or appearance is claimed.

8

Though not dismissing Plaintiff's claims, this Court will require these elements to be more specifically defined in further stages of the litigation.

### 2. Functionality

Defendants argue that Plaintiff has provided no more than conclusory allegations to support the requirement of non-functionality.

To prevent the encroachment of trademark law into the domain of patents, the Lanham Act places the burden on the person asserting trade dress protection to prove that what he seeks to protect is not functional. 15 U.S.C. § 1125(a)(3); *Eppendorf*, 289 F.3d at 355. "The requirement of non-functionality 'prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature.'" *Eppendorf*, 289 F.3d at 355 (quoting *Qualitex*, 514 U.S. at 164).

The traditional test for whether a product feature is function is whether it is "essential to the use or purpose of the article or if it affects the cost or quality of an article." *Qualitex*, 514 U.S. at 165. "Under this traditional definition, if a product feature is 'the reason the device works,' then the feature is functional." *Eppendorf*, 289 F.3d at 251 (quoting *TrafFix*, 532 U.S. at 32). "A feature is 'essential to the use or purpose' of a product if it serves any significant function other than to distinguish a firm's goods or identify their source." *Poly-Am., L.P. v. Stego Indus., L.L.C.*, 3:08-CV-2224-G, 2011 WL 3206687, at *10 (N.D. Tex. July 27, 2011). Even if a feature is non-functional under the traditional test, it may still be found functional under a second, so-called "competitive necessity" test. *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 700 (S.D. Tex. 2013). Under this test, a feature is functional if the exclusive use of the feature "would put competitors at a significant non-reputation-related disadvantage." *TrafFix*, 532 U.S. at 24. However, if the court concludes the feature is functional under the traditional test, it is unnecessary to consider whether the feature is a competitive necessity or if alternative designs are available to competitors. *Id.* at 33.

9

Defendants point to certain claimed elements of Plaintiff's trade dress that arguably perform a function, such as the walls, rim, lid, tab, and argue that they are "the reason the device works." *See Eppendorf*, 289 F.3d at 251. "Without the walls," Defendants argue, "the tumbler would not exist; without the lid, the tumbler would spill and leak; without the rim or 'drinking opening,' a person could not drink from it; and without the tab on the lid, a person could not take the lid off with ease." (Defs.' Mot. Dismiss, Dkt. 8, at 9).

In focusing on individual elements of Plaintiff's trade dress, however, Defendants ignore that "a particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1119 (5th Cir. 1991); 1 McCarthy on Trademarks and Unfair Competition § 8:2 (4th ed.) ("A defendant cannot avoid liability for infringing a trade dress by segregating out individual elements of the trade dress as defined by plaintiff and arguing that no one of these is valid and protectable in and of itself."). Here, the Court cannot conclude that combination of elements alleged by Plaintiff to comprise its trade dress is functional. It is plausible that several of the elements—specifically, the design, appearance, and placement of (1) the taper in the side walls of the tumblers; (2) the upper portion, mid portion, and bottom portion of the side wall of the 30 oz. tumbler; (3) the style line around the base of the tumblers; and (4) the color contrast and color combinations of the tumbler and the tumbler lid—are non-functional. *See, e.g.*, *Primesource*, 2015 WL 11120882, at *4 (finding that a Plaintiff had pleaded sufficient facts to allow the Court to infer that its trade dress was non-functional even though several of the articulated elements were functional in nature). Furthermore, applying the competitive necessity test described above, it is "hypothetically possible" that there are sufficient alternative designs available to YETI's competitors such that granting YETI exclusive use of the trade dress at issue in this case would not put its competitors at a non-reputational disadvantage. *See id.*; *Bd. of Supervisors*, 550 F.3d at 486.

For the foregoing reasons, and because plaintiffs must merely allege sufficient factual matter to "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss, the Court finds that Plaintiff has sufficiently alleged that its trade dress is non-functional. *See Iqbal*, 556 U.S. 662, 678.

### 3. Secondary Meaning

Defendants argue that "Plaintiff's naked allegation that its alleged trade dress has acquired secondary meaning is insufficient." (Defs.' Mot. Dismiss, Dkt. 8, at 9).

To be entitled to legal protection, a plaintiff's trade dress must either be inherently distinctive or have acquired secondary meaning in the public's mind. *Pebble Beach*, 155 F.3d at 536. Because product design "is not inherently distinctive," those asserting rights in product-design trade dress, like Plaintiff here, must establish secondary meaning. *Samara Bros.*, 529 U.S. at 212–13, 216 ("'[A] product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."). Secondary meaning is used generally to indicate that a mark or dress "has come through use to be uniquely associated with a specific source." *Two Pesos, Inc. v. Taco Cabana, Inc.* 505 U.S. 763, 766 n.4 (1992) (quoting Restatement (Third) of Unfair Competition § 13, Comment *e* (Tent.Draft No. 2, Mar. 23, 1990)).

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982). In making this determination, courts consider factors including the

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature and use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress.

*Pebble Beach*, 155 F.3d at 541. "When it comes to proving secondary meaning, the Fifth Circuit has 'consistently expressed a preference for an objective survey of the public's perception of the mark at

11

issue.'" *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 578 (W.D. Tex. 2010) (quoting *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999)).

While Defendants argue that Plaintiff has offered no more than conclusory assertions of secondary meaning, the Court finds that Plaintiff's allegations suffice to give Defendants notice of the basis for its claim of secondary meaning. In addition to asserting that Plaintiff "has extensively and continuously promoted and used its designs for years in the United States and Texas," the Complaint alleges that the company "has enjoyed significant sales of the [tumblers] throughout the United States, including sales to customers in the state of Texas"; that Plaintiff "has expended significant resources advertising and marketing the [tumblers]"; and that, "[a]s a result of [Plaintiff's] exclusive, continuous and substantial use, advertising, and sales of insulated drinkware products bearing [Plaintiff's] Trade Dress, and the publicity and attention that has been paid to [Plaintiff's] Trade Dress, [Plaintiff's] Trade Dress have become famous and have acquired valuable goodwill and substantial secondary meaning in the marketplace." (Compl., Dkt. 1, ¶¶ 8, 16). Taken together and assumed to be true, these factual allegations support an inference that the public has been sufficiently exposed to the Plaintiff's trade dress to identify it with Plaintiff as the source of the goods.

Moreover, the Complaint also alleges that "[Defendants'] use of [Plaintiff's] Trade Dress has been intentional, willful, and malicious . . . [as] evidenced at least by the similarity of the infringing products to [Plaintiff's] Trade Dress." (*Id.* ¶ 27). This allegation—which the Court takes as true, as it must at this stage in the litigation—bolsters Plaintiff's secondary meaning argument. *See Bulbs 4 East Side, Inc. v. Ricks*, No. 14-3672, 2016 WL 4208564, at *5 (S.D. Tex. Aug. 10, 2016) (quoting *Berg v. Symons*, 393 F. Supp. 2d 525, 554 (S.D. Tex. 2005) ("Courts have recognized that evidence of intentional copying shows the strong secondary meaning of [a product] because there is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in

12

existence."). Additionally, while the Fifth Circuit has "consistently expressed a preference for 'an objective survey of the public's perception of' the mark at issue," *Amazing Spaces*, 608 F.3d at 248, it has not held that a complaint alleging trade dress infringement must include survey data to survive a motion to dismiss.

Plaintiff will of course be required to offer specific evidence to support its allegations of secondary meaning. However, Plaintiff is not required to prove up its case at this time.

### 4. Likelihood of Confusion

A Plaintiff can only prevail on a claim of trade dress infringement if it can show a "likelihood of confusion in the minds of potential consumers." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). Defendants argue that "Plaintiff has provided no support for its bald assertions of likelihood of confusion." (Defs.' Mot. Dismiss, Dkt. 8, at 11). Pointing to factors the Fifth Circuit has identified as relevant to the potential for confusion, *see Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009), Defendants assert that Plaintiff has not adequately pleaded likelihood of confusion because it has not made specific allegations as to each factor.

In *Xtreme Lashes*, the Fifth Circuit identified eight factors to guide courts' evaluation of the likelihood of confusion in the context of a motion for summary judgment: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes*, 576 F.3d at 227. The court has cautioned that "[n]o single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Bd. of Supervisors*, 550 F.3d at 478.

To the extent these factors are relevant to the instant motion to dismiss, the Court finds that Plaintiff has made sufficient allegations that, when taken as true and viewed in the light most favorable to Plaintiff, allow the court to plausibly infer a likelihood of confusion. For example, the

Plaintiff has produced photographs showing the close similarity between the parties' products—stainless steel tumblers—and product designs. *See Xtreme Lashes*, 576 F.3d at 227. Plaintiff has also alleged that Defendants' copying of its products is intentional. *See id.* These allegations are relevant to several of the factors enumerated in *Xtreme Lashes* and support Plaintiff's assertion of a likelihood of confusion.

The Court therefore concludes that Plaintiff's allegations state a valid claim for trade dress infringement and therefore DENIES Plaintiff's motion to dismiss this claim.

**B.     False Designation of Origin, Unfair Competition, and Unjust Enrichment**

Defendants argue that Plaintiff has failed to state valid claims for false designation of origin, unfair competition under state and federal law, and unjust enrichment. These claims, Defendants assert, are either the same as or dependent upon Plaintiff's trade dress infringement claim, and thus should be dismissed if the infringement claim fails. The Court, however, has concluded that Plaintiff's trade dress infringement should not be dismissed. As Defendant's arguments are premised entirely on the dismissal of Plaintiff's infringement claim, they fail to justify dismissal of Plaintiff's false designation of origin, unfair competition, and unjust enrichment claims.

**C.     Trade Dress Dilution**

Defendants argue that Plaintiff fails to state a claim for trade dress dilution primarily because it has not established that its trade dress is famous.

"Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product," and occurs through blurring or tarnishing. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 489 (5th Cir. 2004). "Blurring involves a diminution in the uniqueness or individuality of a mark because of its use on unrelated goods" whereas tarnishing occurs when the mark is linked to poor-quality products or is portrayed in a negative context, diminishing the public's view of the mark. *Id.* The Lanham Act provides protection against such

14

dilution, but the scope of this protection is limited in several ways. First, it applies only to marks that are both famous and distinctive. 15 U.S.C. § 1125(c)(1). Second, it protects against only those who begin using the mark *after* the mark has become famous. *Id.* Third, the junior user's manner of using the mark must risk dilution by blurring or tarnishing. *Id.*

The statute explains that "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A). It further provides a non-exclusive list of factors courts may consider in determining whether a mark is sufficiently famous, including: (i) the duration, extent, and geographic reach of advertising and publicity of the mark; (ii) the amount, volume, and geographic extent of sales of goods under the mark; (iii) the extent of actual recognition of the mark; (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.*

The necessary showing of fame is a substantial one. "Dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Bd. of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 674 (W.D. Tex. 2008) (citing *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999)); H.R. Rep. No. 109–23, at 25 (2005) ("The goal must be to protect only the most famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it. . . . [The Trademark Dilution Revision Act] narrows the application of dilution by tightening the definition of what is necessary to be considered a famous mark."). Examples of qualifying marks provided in the legislative history include DuPont, Kodak, and Buick. *Regents*, 550 F. Supp. 2d at 674; H.R. Rep. No. 104–374, at 3 (1995). "In short, for purposes of § 1125(c), a mark usually will achieve broad-based fame only if a large portion of the general

15

consuming public recognizes that mark. In other words, the mark must be a household name." *Regents*, 550 F. Supp. 2d at 674.

The Court finds Plaintiff has made sufficient allegations of fame to survive a motion to dismiss. At this early stage in the litigation, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Here, Plaintiff's Complaint includes both an allegation that the company's trade dress is famous, (Compl., Dkt. 1, ¶ 8), and allegations about the "duration, extent, and geographic reach of advertising and publicity of the mark" and the "geographic extent of sales of goods . . . offered under the mark." *See* 15 U.S.C. § 1125(c)(2)(A) (identifying these factors as some of those courts may consider in determining whether a mark possesses the requisite degree of recognition). Specifically, the Complaint alleges that "[Plaintiff] has extensively and continuously promoted and used its designs for years in the United States and in Texas," (Compl., Dkt. 1, ¶ 8); that "[Plaintiff's] designs have become well-known indicators of the origin and quality of [Plaintiff's] insulated drinkware products, (*id.*); that Plaintiff has "invested substantially in the . . . marketing of the [tumblers], (*id.* ¶ 9); and that Plaintiff has "enjoyed significant sales of the [tumblers]" in the United States and Texas and has "expended significant resources advertising and marketing the [tumblers]." (*Id.*). The Court therefore finds that Plaintiff has sufficiently alleged fame with respect to its claims for trade dress dilution under both state and federal law.

Defendants also allege that Plaintiff's Complaint does not plausibly allege that its trade dress is distinctive or that Defendants began using Plaintiff's trade dress after it had become famous. The Court disagrees. "[A] mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning . . . ." *Samara Bros.*, 529 U.S. at 211. As discussed above, Plaintiff's Complaint plausibly alleges secondary meaning and thus distinctiveness. Additionally, Plaintiff has

16

alleged that its trade dress acquired fame and distinctiveness before Defendants entered the market. (Compl., Dkt. 1, ¶ 43).

In sum, while the burden of proving fame is insurmountable for all but the most famous marks, Plaintiff is not required to prove its case at this time. Plaintiff need only plead a plausible claim for relief, and the Court concludes it has done so with respect to the elements challenged by Defendants.

**D.     Common Law Misappropriation**

Finally, Defendants argue that Plaintiff's common law misappropriation claim fails because Plaintiff offered no allegations beyond mere legal conclusion in support of its claim.[3] The Court disagrees.

The elements of a misappropriation claim under Texas law are: "(i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.*, at 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 839 (5th Cir. 2004) (quoting *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App. 1993)).

Defendants point to a paragraph in Plaintiff's Complaint where it appears Plaintiff has merely recited these elements of a misappropriation cause of action, inserting the parties' names where appropriate. (*See* Compl., Dkt. 1, ¶ 62). While it is true that a "formulaic recitation of the elements of a cause of action" is insufficient, *Twombly*, 550 U.S. at 555, the Court must look beyond a single paragraph to determine whether the allegations in the complaint, taken as a whole, support

---

[3] Defendants also assert that the misappropriation claim fails because Plaintiff has no protectable rights in the trade dress that forms the basis of Plaintiff's claim. However, the Court has already found that Plaintiff's Complaint plausibly alleges the contrary.

the cause of action. *Tellabs*, 551 U.S. at 322. Having done so, the Court concludes Plaintiff has sufficiently pleaded its misappropriation claim. Elsewhere in its Complaint, Plaintiff alleges that it "has invested substantially" in the design and development of its products, (Compl., Dkt. 1, ¶ 9), that Defendants are producing and selling infringing products, (*id.* ¶¶ 9, 20), that Defendant has enjoyed profits by doing so, (*id.* ¶ 64), and that Plaintiff has resultantly suffered damage to its business goodwill and the reputation for quality associated with its products. (*Id.*). These allegations, taken together, support a plausible claim for misappropriation.

The Court therefore declines to dismiss Plaintiff's misappropriation claim.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6). (Dkt. 8). Plaintiff should note, however, that this Court will ultimately grant relief only as to those aspects of Plaintiff's trade dress that are at that time sufficiently identified.

**SIGNED** on May 18, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE